**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| Agiliti Health, Inc.,<br><br>    *Plaintiff*,<br><br>v.<br><br>Resilience Healthcare – Weiss Memorial Hospital, LLC, Resilience Healthcare – West Suburban Medical Center, LLC, and AUM Global Healthcare Management, LLC dba Resilience Healthcare,<br><br>    *Defendants*. | Case No.  1:25-cv-10467 |

## COMPLAINT

Plaintiff Agiliti Health, Inc. ("Agiliti"), for its complaint against defendants Resilience Healthcare - Weiss Memorial Hospital, LLC ("Weiss"), Resilience Healthcare - West Suburban Medical Center, LLC ("West"), and AUM Global Healthcare Management, LLC, dba Resilience Healthcare ("Resilience") (collectively, the "Defendants"), alleges upon personal knowledge with respect to itself and its own acts, and upon information and belief with respect to all other matters, as follows:

### NATURE AND DESCRIPTION OF ACTION

1.      This is a breach of contract action for damages due to the Defendants' failure to make lease payments for medical equipment, and to pay fees for maintaining and servicing it.

### JURISDICTION AND VENUE

2.      The Court has jurisdiction of this action under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs, and complete diversity of citizenship exists.

1

3. Agiliti is a Delaware corporation with its principal place of business in Minnesota.

4. Upon information and belief, defendant Weiss's sole member is Resilience.

5. Upon information and belief, Resilience is also West's sole member.

6. Upon information and belief, Resilience's sole member is Manoj Prasad.

7. Mr. Prasad is a citizen of California.

8. Mr. Prasad is not a citizen of Minnesota or Delaware.

9. Upon information and belief, none of the Defendants' members, through every organizational lawyer, are citizens of Delaware or Minnesota.

10. Personal jurisdiction over Weiss is proper because its principal place of business is in Illinois.

11. Personal jurisdiction over West is proper because its principal place of business is in Illinois.

12. Personal jurisdiction over Resilience is proper because its principal place of business is in Illinois.

13. Venue is proper under 28 U.S.C. § 1391(b) because the Defendants' principal places of business are in this District.

14. In addition, the events giving rise to this action occurred in this District, including the delivery of medical equipment, and the equipment maintenance and repair services at issue.

## FACTUAL BACKGROUND

15. Agiliti leases medical equipment to hospitals and also provides equipment maintenance and repair services.

16. Weiss is a general hospital.

17. West is a general medical and surgical facility.

18. Resilience owns and operates Weiss and West.

**1. The BioMed360 Agreement**

19. In September 2019, Weiss and West signed a contract entitled BioMed360 Agreement (the "BioMed Agreement") under which Agiliti agreed to provide equipment safety, maintenance, and repair services.

20. In exchange, Weiss and West agreed to remit payment to Agiliti for the services rendered at an agreed rate.

21. An authentic copy of the BioMed Agreement is attached as Exhibit A.

22. Agiliti, Weiss, and West amended the BioMed Agreement three times.

23. After a change in ownership, the third amendment made all three Defendants, as named in the caption, parties to the Biomed Agreement.

24. Authentic copies of the amendments are attached as Exhibits B, C and D.

**2. The West Supplemental Equipment Services Agreement**

25. In April 2020, West signed a Supplemental Equipment Services Agreement (the "West SESA") under which Agiliti agreed to provide equipment safety, maintenance, and repair services.

26. In exchange, West agreed to remit payments to Agiliti for the services rendered at an agreed rate.

27. An authentic copy of the West SESA is attached as Exhibit E.

28. Agiliti and West amended the West SESA once.

29. An authentic copy of the amendment is attached as Exhibit F.

**3.    The Weiss Supplemental Equipment Services Agreement**

30.    In November 2020, Weiss signed a Supplemental Equipment Services Agreement (the "Weiss SESA") under which Agiliti agreed to provide equipment safety, maintenance, and repair services.

31.    In exchange, Weiss agreed to remit payments to Agiliti for the services rendered at an agreed rate.

32.    An authentic copy of the Weiss SESA is attached as Exhibit G.

33.    Agiliti and Weiss amended the Weiss SESA once.

34.    An authentic copy of the amendment is attached as Exhibit H.

**4.    The Onsite Managed Program Services Agreement**

35.    In June 2024, West signed an Onsite Managed Program Services Agreement (the "Onsite Agreement") under which Agiliti agreed to provide equipment safety, maintenance, and repair services.

36.    In exchange, West agreed to remit payments to Agiliti for the services rendered at an agreed rate.

37.    An authentic copy of the Onsite Agreement is attached as Exhibit I.

**5.    West's Breach of the Agiliti Invoices**

38.    Between November 2024 and July 2025, Agiliti issued invoices to West (the "Agiliti West Invoices") for the price of medical equipment leased, and equipment repair services performed at West's request.

39.    An authentic copy of the Agiliti West Invoices is attached as Exhibit J.

40.    West ordered the goods and services identified in the Agiliti West Invoices.

41.     The goods and services identified in the Agiliti West Invoices were provided at the location(s) West requested.

42.     West accepted the goods and services identified in the Agiliti West Invoices.

43.     West did not pay the price of the Agiliti West Invoices.

44.     West received the Agiliti West Invoices at or around the time of the invoice dates.

45.     There were no defects or deficiencies in any of the goods or services identified on the Agiliti West Invoices.

46.     West has no documents showing there were any defects or deficiencies in any of the goods or services listed on the Agiliti West Invoices (such as photos, inspection reports, or emails/text messages sent before this case was filed).

47.     West did not notify Agiliti (or any of its affiliates, subsidiaries, or employees) in writing of any defects or deficiencies in any of the goods or services identified on the Agiliti West Invoices before this case was filed.

48.     West did not notify Agiliti (or any of its affiliates, subsidiaries, or employees) verbally of any defects or deficiencies in any of the goods or services identified on the Agiliti West Invoices before this case was filed.

49.     West has no documents showing it notified Agiliti (or any of its affiliates, subsidiaries, or employees) of any defects or deficiencies in any of the goods or services identified on the Agiliti West Invoices before this case was filed.

50.     The goods identified in the Agiliti West Invoices are not capable of being returned to Agiliti in substantially the same condition as they were in when they were delivered.

51.     West had an opportunity to inspect the goods and services identified in the Agiliti West Invoices when they were provided.

52. West did not notify Agiliti (or any of its affiliates, subsidiaries, or employees) in writing that it was rejecting any of the goods or services identified in the Agiliti West Invoices before this case was filed.

53. West did not notify Agiliti (or any of its affiliates, subsidiaries, or employees) verbally that it was rejecting any of the goods or services identified in the Agiliti West Invoices before this case was filed.

54. West has no documents showing it notified Agiliti (or any of its affiliates, subsidiaries, or employees) it was rejecting any of the goods or services identified in the Agiliti West Invoices before this case was filed.

55. West did not object in writing to any of the terms of the Agiliti West Invoices before this case was filed.

56. West has no documents showing it notified Agiliti (or any of its affiliates, subsidiaries, or employees) of any objections to the terms of the Agiliti West Invoices before this case was filed.

57. West did not object verbally to any of the terms of the Agiliti West Invoices before this case was filed.

58. West never notified Agiliti (or any of its affiliates, subsidiaries, or employees) in writing that it had breached any express or implied warranty with respect to any of the goods and services identified in the Agiliti West Invoices before this case was filed.

59. West has no documents showing it notified Agiliti (or any of its affiliates, subsidiaries, or employees) that it had breached any express or implied warranty with respect to any of the goods and services identified in the Agiliti West Invoices before this case was filed.

6

60. West never notified Agiliti (or any of its affiliates, subsidiaries, or employees) verbally that it had breached any express or implied warranty with respect to any of the goods and services identified in the Agiliti West Invoices before this case was filed.

61. West never made any efforts to return any of the goods identified in the Agiliti West Invoices to Agiliti (or any of its affiliates, subsidiaries, or employees).

62. West has no documents showing it made any efforts to return any of the goods identified in the Agiliti West Invoices to Agiliti (or any of its affiliates, subsidiaries, or employees).

63. West never denied liability for the amount of the Agiliti West Invoices before this case was filed.

64. West has no documents showing it gave Agiliti (or any of its affiliates, subsidiaries, or employees) notice of any problems with, or objections to, its performance of any of its obligations with respect to the Agiliti West Invoices before this case was filed.

65. Pursuant to the Agiliti West Invoices, payment of $1,371,084.79 was due between December 2024 and August 2025.

66. An authentic copy of Agiliti's statement of account identifying the unpaid balance of the Agiliti Invoices is attached as Exhibit K.

67. West has not paid any of the amounts indicated as being outstanding on the statement of account.

68. West is also still in possession of medical equipment that belongs to Agiliti.

69. All conditions precedent to the filing of this action by Agiliti against West have occurred or been performed.

7

70. West is liable to Agiliti in an amount to be determined at trial but in no event less than $1,371,084.79, plus late charges of 18% per annum, together with Agiliti's attorneys' fees and expenses.

**6. Weiss's Breach of the Agiliti Invoices**

71. Between October 2024 and July 2025, Agiliti issued invoices to Weiss (the "Agiliti Weiss Invoices") for the price of medical equipment leased, and equipment repair services performed at Weiss's request.

72. An authentic copy of the Agiliti Weiss Invoices is attached as Exhibit L.

73. Weiss ordered the goods and services identified in the Agiliti Weiss Invoices.

74. The goods and services identified in the Agiliti Weiss Invoices were provided at the location(s) Weiss requested.

75. Weiss accepted and used the goods and services identified in the Agiliti Weiss Invoices.

76. Weiss did not pay the price of the Agiliti Weiss Invoices.

77. Weiss received the Agiliti Weiss Invoices at or around the time of the invoice dates.

78. There were no defects or deficiencies in the goods and services identified in the Agiliti Weiss Invoices.

79. Weiss has no documents showing there were any defects or deficiencies in any of the goods or services identified on the Agiliti Weiss Invoices (such as photos, inspection reports, or emails/text messages sent before this case was filed).

80. Weiss did not notify Agiliti (or any of its affiliates, subsidiaries, or employees) in writing of any defects or deficiencies in any of the goods or services identified in the Agiliti Weiss Invoices before this case was filed.

81. Weiss did not notify Agiliti (or any of its affiliates, subsidiaries, or employees) verbally of any defects or deficiencies in any of the goods or services identified in the Agiliti Weiss Invoices before this case was filed.

82. Weiss has no documents showing it notified Agiliti (or any of its affiliates, subsidiaries, or employees) of any defects or deficiencies in any of the goods or services identified in the Agiliti Weiss Invoices before this case was filed.

83. The goods identified in the Agiliti Weiss Invoices are not capable of being returned to Agiliti in substantially the same condition as they were in when they were delivered.

84. Weiss had an opportunity to inspect the goods and services identified in the Agiliti Weiss Invoices when they were provided.

85. Weiss did not notify Agiliti (or any of its affiliates, subsidiaries, or employees) in writing that it was rejecting any of the goods or services identified in the Agiliti Weiss Invoices before this case was filed.

86. Weiss did not notify Agiliti (or any of its affiliates, subsidiaries, or employees) verbally that it was rejecting any of the goods and services identified in the Agiliti Weiss Invoices before this case was filed.

87. Weiss has no documents showing it notified Agiliti (or any of its affiliates, subsidiaries, or employees) it was rejecting any of the goods or services identified in the Agiliti Weiss Invoices before this case was filed.

9

88. Weiss did not object in writing to any of the terms of the Agiliti Weiss Invoices before this case was filed.

89. Weiss has no documents showing it notified Agiliti (or any of its affiliates, subsidiaries, or employees) of any objections to any of the terms of the Agiliti Weiss Invoices before this case was filed.

90. Weiss did not object verbally to any of the terms of the Agiliti Weiss Invoices before this case was filed.

91. Weiss never notified Agiliti (or any of its affiliates, subsidiaries, or employees) in writing that it had breached any express or implied warranty with respect to any of the goods or services identified in the Agiliti Weiss Invoices before this case was filed.

92. Weiss has no documents showing it notified Agiliti (or any of its affiliates, subsidiaries, or employees) in writing that it had breached any express or implied warranty with respect to any of the goods or services identified in the Agiliti Weiss Invoices before this case was filed.

93. Weiss never notified Agiliti (or any of its affiliates, subsidiaries, or employees) verbally that it had breached any express or implied warranty with respect to any of the goods and services identified in the Agiliti Weiss Invoices before this case was filed.

94. Weiss never made any efforts to return any of the goods identified in the Agiliti Weiss Invoices to Agiliti.

95. Weiss has no documents showing it made any efforts to return any of the goods identified in the Agiliti Weiss Invoices to Agiliti.

96. Weiss never denied liability for the amount of the Agiliti Weiss Invoices before this case was filed.

97. Weiss has no documents showing it gave Agiliti (or any of its affiliates, subsidiaries, or employees) notice of any problems with, or objections to, its performance of any of its obligations with respect to the Agiliti Weiss Invoices before this case was filed.

98. Under the Agiliti Weiss Invoices, payment of $1,107,049.30 was due between November 2024 and August 2025.

99. An authentic copy of Agiliti's statement of account identifying the unpaid balance of the Agiliti Weiss Invoices is attached as Exhibit M.

100. Weiss has not paid any of the amounts listed as being outstanding on the statement of account.

101. Weiss is also still in possession of medical equipment that belongs to Agiliti.

102. All conditions precedent to the filing of this action by Agiliti against Weiss have occurred or been performed.

103. Weiss is liable for payment of the Agiliti Weiss Invoices in an amount to be determined at trial but in no event less than $1,107,049.30, plus late charges of 18% per annum, together with attorneys' fees and expenses.

**7. West's Breach of the Agiliti Surgical Invoices**

104. Between April 2024 and February 2025, Agiliti Surgical, Inc. ("Agiliti Surgical") issued invoices to West (the "Surgical Invoices") for the price of medical services performed at West's request.

105. An authentic copy of the Surgical Invoices is attached as Exhibit N.

106. West ordered the services identified in the Surgical Invoices.

107. West accepted the services identified in the Surgical Invoices.

108. West did not pay the price of the Surgical Invoices.

11

109.    There were no deficiencies in the services identified in the Surgical Invoices.

110.    West has no documents showing there were any deficiencies in any items listed on the Surgical Invoices (such as photos, inspection reports, or emails/text messages sent before this case was filed).

111.    West did not notify Agiliti Surgical (or any of its affiliates, subsidiaries, or employees) in writing of any deficiencies in any of the services identified in the Surgical Invoices before this case was filed.

112.    West did not notify Agiliti Surgical (or any of its affiliates, subsidiaries, or employees) verbally of any deficiencies in any of the services identified in the Surgical Invoices before this case was filed.

113.    West has no documents showing it notified Agiliti Surgical (or any of its affiliates, subsidiaries, or employees) of any deficiencies in any of the services identified in the Surgical Invoices before this case was filed.

114.    West had an opportunity to inspect the services identified in the Surgical Invoices when they were provided.

115.    West did not object in writing to any of the terms of the Surgical Invoices before this case was filed.

116.    West did not object verbally to any of the terms of the Surgical Invoices before this case was filed.

117.    West never notified Agiliti Surgical (or any of its affiliates, subsidiaries, or employees) in writing that it had breached any express or implied warranty with respect to any of the goods and services identified in the Surgical Invoices before this case was filed.

12

118. West never notified Agiliti Surgical (or any of its affiliates, subsidiaries, or employees) verbally that it had breached any express or implied warranty with respect to any of the goods and services identified in the Surgical Invoices before this case was filed.

119. West never denied liability for the amount of the Surgical Invoices before this case was filed.

120. West has no documents showing it gave Agiliti Surgical (or any of its affiliates, subsidiaries, or employees) notice of any problems with, or objections to, its performance of any of its obligations with respect to the Surgical Invoices before this case was filed.

121. Under the Surgical Invoices, payment of $2,209.00 was due between May 2024 and April 2025.

122. An authentic copy of Agiliti Surgical's statement of account identifying the unpaid balance of the Surgical Invoices is attached as Exhibit O.

123. West has not paid any of the amount indicated as being outstanding on the statement of account.

124. All conditions precedent to the filing of this action by Agiliti Surgical against West have occurred or been performed.

125. West is liable for payment of the Surgical Invoices in an amount to be determined at trial but in no event less than $2,209.00, plus late charges of 18% per annum, together with attorneys' fees and expenses.

**8.     West's Breach of the Agiliti Repair Invoices**

126. In January 2025, Agiliti Surgical Equipment Repair, Inc. ("Agiliti Repair") issued invoices to West (the "Repair Invoices") for the price of surgical equipment repair services performed at West's request.

127. An authentic copy of the Repair Invoices is attached as Exhibit P.

128. West ordered the services identified in the Repair Invoices.

129. West accepted the services identified in the Repair Invoices.

130. West did not pay the price of the Repair Invoices.

131. West received the Repair Invoices at or around the time of the invoice date.

132. There were no deficiencies in the services identified in the Repair Invoices.

133. West has no documents showing there were any deficiencies in any items listed on the Repair Invoices (such as photos, inspection reports, or emails/text messages sent before this case was filed).

134. West did not notify Agiliti Repair (or any of its affiliates, subsidiaries, or employees) in writing of any deficiencies in any of the services identified in the Repair Invoices before this case was filed.

135. West did not notify Agiliti Repair (or any of its affiliates, subsidiaries, or employees) verbally of any deficiencies in any of the services identified in the Repair Invoices before this case was filed.

136. West has no documents showing it notified Agiliti Repair (or any of its affiliates, subsidiaries, or employees) of any deficiencies in any of the services identified in the Repair Invoices before this case was filed.

137. West had an opportunity to inspect the services identified in the Repair Invoices when they were provided.

138. West did not object in writing to any of the terms of the Repair Invoices before this case was filed.

139. West did not object verbally to any of the terms of the Repair Invoices before this case was filed.

140. West never notified Agiliti Repair (or any of its affiliates, subsidiaries, or employees) in writing that it had breached any express or implied warranty with respect to any of the services identified in the Repair Invoices before this case was filed.

141. West never notified Agiliti Repair (or any of its affiliates, subsidiaries, or employees) verbally that it had breached any express or implied warranty with respect to any of the services identified in the Repair Invoices before this case was filed.

142. West never denied liability for the amount of the Repair Invoices before this case was filed.

143. West has no documents showing it gave Agiliti Repair (or any of its affiliates, subsidiaries, or employees) notice of any problems with, or objections to, its performance of any of its obligations with respect to the Repair Invoices before this case was filed.

144. Under the Repair Invoices, payment of $3,738.76 was due in February 2025.

145. An authentic copy of Agiliti Repair's statement of account identifying the unpaid balance of the Repair Invoices is attached as Exhibit Q.

146. West has not paid any of the amount indicated as being outstanding on the statement of account.

147. West is liable for payment of the Repair Invoices in an amount to be determined at trial but in no event less than $3,738.76, plus late charges of 18% per annum, together with attorneys' fees and expenses.

148. All conditions precedent to the filing of this action by Agiliti Repair against West have occurred or been performed.

15

**9.** **Assignment of Rights**

149. On August 26, 2025, Agiliti Surgical and Agiliti Repair assigned their contractual rights against Weiss, West, and Resilience to Plaintiff, Agiliti Health, Inc.

**COUNT 1**

**(Breach of Contract against Weiss)**

150. Agiliti repeats the allegations set forth in the preceding paragraphs of the Complaint as if fully set forth herein.

151. The Agiliti Weiss Invoices are valid and enforceable written contracts.

152. Weiss materially breached the terms of the Agiliti Weiss Invoices by failing to pay them in full when due.

153. Weiss is liable for the total of the Agiliti Weiss Invoices in an amount to be determined at trial, but in no event less than $1,107,049.30 plus late charges of 18% per annum, together with Agiliti's reasonable attorneys' fees and expenses.

**COUNT 2**

**(Breach of Contract against West)**

154. Agiliti repeats the allegations set forth in the preceding paragraphs of the Complaint as if fully set forth herein.

155. The Agiliti West Invoices, Surgical Invoices, and Repair Invoices are valid and enforceable written contracts.

156. West materially breached the terms of the Agiliti West Invoices, Surgical Invoices, and Repair Invoices by failing to pay them in full when due.

157. West is liable for the total of the Agiliti West Invoices, Surgical Invoices, and Repair Invoices in an amount to be determined at trial, but in no event less than $1,377,032.55

plus late charges of 18% per annum, together with Agiliti's reasonable attorneys' fees and expenses.

## COUNT 3

### (Breach of Contract against Resilience)

158.    Agiliti repeats the allegations set forth in the preceding paragraphs of the Complaint as if fully set forth herein.

159.    The Agiliti Weiss Invoices, Agiliti West Invoices, Surgical Invoices, and Repair Invoices are valid and enforceable written contracts.

160.    Resilience materially breached the terms of the Agiliti Weiss Invoices, Agiliti West Invoices, Surgical Invoices, and Repair Invoices by failing to pay them in full when due.

161.    Resilience is liable for the total of the Agiliti Weiss Invoices, Agiliti West Invoices, Surgical Invoices, and Repair Invoices in an amount to be determined at trial, but in no event less than $2,484,081.85 plus late charges of 18% per annum, together with Agiliti's reasonable attorneys' fees and expenses.

## COUNT 4

### (Account Stated against Weiss)

162.    Agiliti repeats and re-alleges each of the allegations set forth in the preceding paragraphs of the Complaint as if fully set forth herein.

163.    Weiss expressly agreed to pay the Agiliti Weiss Invoices by accepting the goods and services identified in the invoices.

164.    In June 2025, Agiliti sent correspondence to Steward seeking payment of the full balance owed by Weiss.

165.	Agiliti and its assignors sent monthly invoices to Weiss for the goods and services identified in the Agiliti Weiss Invoices.

166.	Weiss failed to reject or object to any of the Agiliti Weiss Invoices.

167.	Contemporaneous with providing the goods and services identified in the Agiliti Weiss Invoices, Agiliti and its assignors submitted a statement of account to Weiss for the balance owed.

168.	Weiss retained the statements of account without objection.

169.	Weiss expressly or impliedly acknowledged the correctness of the balance owed for the goods and services identified in the Agiliti Weiss Invoices.

170.	Agiliti and its assignors have stated an account against Weiss in the amount of $1,107,049.30, plus late fees assessed at 18% per annum.

## COUNT 5

### (Account Stated against West)

171.	Agiliti repeats and re-alleges each of the allegations set forth in the preceding paragraphs of the Complaint as if fully set forth herein.

172.	West expressly agreed to pay the Agiliti West Invoices, Surgical Invoices, and Repair Invoices by accepting the goods and services identified in the invoices.

173.	In June 2025, Agiliti sent correspondence to Steward seeking payment of the full balance owed by West.

174.	Agiliti and its assignors sent monthly invoices to West for the goods and services identified in the Agiliti West Invoices, Surgical Invoices, and Repair Invoices.

175.	West failed to reject or object to any of the Agiliti West Invoices, Surgical Invoices, and Repair Invoices.

18

176.   Contemporaneous with providing the goods and services identified in the Agiliti West Invoices, Surgical Invoices, and Repair Invoices, Agiliti and its assignors submitted a statement of account to West for the balance owed.

177.   West retained the statements of account without objection.

178.   West expressly or impliedly acknowledged the correctness of the balance owed for the goods and services identified in the Agiliti West Invoices, Surgical Invoices, and Repair Invoices.

179.   Agiliti and its assignors have stated an account against West in the amount of $1,377,032.55, plus late fees assessed at 18% per annum.

## COUNT 6

**(Right to repossess equipment under 810 ILCS 5/2A–525 against all Defendants)**

180.   Agiliti repeats and re-alleges each of the allegations set forth in the preceding paragraphs of the Complaint as if fully set forth herein.

181.   The Agiliti Weiss Invoices, Agiliti West Invoices, Surgical Invoices, and Repair Invoices are valid and enforceable written contracts.

182.   Pursuant to 810 ILCS 5/2A–525, an event of default permits Agiliti to take possession of its equipment on the Defendants' property.

183.   The Defendants are in default of their obligations under the Agiliti Weiss Invoices, Agiliti West Invoices, Surgical Invoices, and Repair Invoices by failing to make payments when due.

184.   Agiliti is entitled to take possession of its equipment from the Defendants.

19

## COUNT 7

### (Declaratory Judgment against the Defendants)

185.   Agiliti repeats and re-alleges each of the allegations set forth in the preceding paragraphs of the Complaint as if fully set forth herein.

186.   The BioMed Agreement is a valid and enforceable written contract between Agiliti and the Defendants.

187.   On June 1, 2025, Agiliti sent a termination notice to Resilience concerning the Defendants' breach of the BioMed Agreement.

188.   The Defendants failed to cure their breach of contract by refusing to pay the outstanding balance owed in full within thirty (30) days of receipt of the termination notice.

189.   Agiliti is entitled to a declaratory judgment that the BioMed Agreement has been validly terminated and is of no further force or effect.

### PRAYER FOR RELIEF

WHEREFORE, Agiliti prays for judgment against Weiss, West, and Resilience, and requests the Court grant the following relief:

A.   On its first cause of action awarding Agiliti damages against Weiss in an amount to be determined at trial but believed to exceed $1,107,049.30, plus late fees assessed at 18% per annum, and Agiliti's attorney's fees and costs.

B.   On its second cause of action awarding Agiliti damages against West in an amount to be determined at trial but believed to exceed $1,377,032.55, plus late fees assessed at 18% per annum, and Agiliti's attorney's fees and costs.

20

C.      On its third cause of action awarding Agiliti damages against Resilience in an amount to be determined at trial but believed to exceed $2,484,081.85, plus late fees assessed at 18% per annum, and Agiliti's attorney's fees and costs.

D.      On its fourth cause of action awarding Agiliti damages against Weiss in an amount to be determined at trial but believed to exceed $1,107,049.30, plus late fees assessed at 18% per annum, and Agiliti's attorney's fees and costs.

E.      On its fifth cause of action awarding Agiliti damages against West in an amount to be determined at trial but believed to exceed $1,377,032.55, plus late fees assessed at 18% per annum, and Agiliti's attorney's fees and costs.

F.      On its sixth cause of action awarding Agiliti the authorization to take possession of its equipment from the Defendants.

G.      On its seventh cause of action awarding Agiliti the authorization to terminate the BioMed Agreement with Resilience.

H.      Awarding such other, further, and different relief as the Court shall deem proper.


DATED:  September 2, 2025                    Respectfully submitted,

                                            _/s/ David M. Mannion_____

                                            David M. Mannion*
                                            BLAKELEY LC
                                            530 Technology Drive, Suite 100
                                            Irvine, CA 92618
                                            Tel. (949) 260-0611
                                            Email: DMannion@BlakeleyLC.com

                                            *Attorneys for Plaintiff Agiliti Health, Inc.*

                                            **Pro hac vice application pending*

21